IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **UNM Rainforest Innovations,** *Plaintiff,* § § § | | |
| v. § | CIVIL NO. 6-20-CV-00143-ADA | |
| § **D-LINK CORPORATION,** § *Defendants* § | | |

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF UNM RAINFOREST INNOVATIONS' MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE

Before the Court is the Motion of Plaintiff UNM Rainforest Innovations (formerly STC.UNM) for Leave to Effect Alternative Service filed on March 11, 2020 (ECF No. 4). After having reviewed Plaintiff's Motion and applicable law, the Court has determined that Plaintiff UNM Rainforest Innovations' Motion for Leave to Effect Alternative Service should be **GRANTED** in part and **DENIED** in part.

### I.  BACKGROUND

UNM Rainforest Innovations (UNM) filed its complaint on February 24, 2020, alleging infringement of three patents-in-suit.[1] Pl.'s Compl. At 3, ECF No. 1. STC. UNM alleged that D-Link Corporation ("D-Link") manufactures, imports, uses, sells, offers for sale, and markets communications equipment, networking devices, wireless receivers, extenders, adapters, and mesh systems[2] which infringe on the asserted patents. *Id*. at 6. D-Link is a Taiwanese Company, with its

---

[1] U.S. Patent Nos. 8,249,204 (the "'204 Patent"); 8,265,096 (the "'096 Patent"); and 8,565,326 (the "'326 Patent"), ECF No. 1 at 4.
[2] The Complaint focuses on six different D-Link products and systems (collectively, "Accused Instrumentalities). *Id*. at 6. These instrumentalities include DAP-1860, DWA 181, DWA 171, DWA-182. COVR-C1203, and COVR-2202.

1

principal place of business located at No. 289, Sinhu 3rd Rd., Neihu District, Taipei, Taiwan. ECF No. 4 at 2. D-Link does not maintain a registered agent in the United States, but it does operate "International Offices." *Id.* at 2. Among these are a U.S. subsidiary office located in Fountain Valley, California. *Id.* at 2. The Fountain Valley office operates through a subsidiary company of D-Link called D-Link Systems, Inc ("D-Link Systems"). *Id.*

On March 11, 2020, UNM filed a Motion for Leave to Effect Alternative Service on D-Link. ECF No. 4 at 1. UNM filed this motion due to concerns regarding the start of the one-year clock for submitting *inter partes* review ("IPR") petitions and the potential added costs to effect service under Taiwanese Law. ECF No. 4. UNM argues that alternative service of process is justified and seeks to serve D-Link by sending the complaint and other required materials to D-Link Corporation's headquarters in Taiwan and also by sending the complaint and other required materials to the registered agent for service of process for D-Link's United States subsidiary, D-Link Systems. *Id.* UNM argues that this method of service is sufficient to satisfy Rules 4(f)(2), 4(f)(3), and 4(h)(2) of the Federal Rules of Civil Procedure.

## II.   LEGAL STANDARDS

Service of process on a foreign defendant must comply with: (1) the Federal Rules of Civil Procedure; (2) international agreements entered into by the United States and the relevant foreign country; and (3) the due process protections afforded by the United States Constitution.

**1. Federal Rules of Civil Procedure**

Rule 4(h) of the Federal Rules of Civil Procedure governs service of process on corporations such as D-Link. FED. R. CIV. P. 4(h). Pursuant to Rule 4(h)(2), to effect service on a corporation at a place not within any judicial district of the United States, Plaintiff must conduct

service of process in any manner prescribed by Rule 4(f) for serving an individual except for personal delivery under Rule (4)(f)(2)(C)(i). *Id*.

Pursuant to Rule 4(f), service on a foreign defendant must comply with one of three provisions. FED. R. CIV. P. 4(f). Rule 4(f)(1) states that a plaintiff may serve a foreign defendant corporation by any means specified by any international agreement.[3] *Id*. Rule 4(f)(2) provides several methods of service to an individual in a country when there is no applicable international agreement. *Id*. First, under 4(f)(2)(A), a party may serve a foreign corporation in the manner prescribed by the law of the foreign country. Second, under Rule 4(f)(2)(B), a party may effect service through a letter rogatory. Third, under Rule 4(f)(2)(C)(ii), a party may serve a foreign corporation with any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the Court to the party to be served unless prohibited by the law of the foreign country.

Rule 4(f)(3) permits a party to use an alternative method of service if the party obtains the permission of the Court, and an international agreement does not otherwise prohibit the requested method. *Id*. Thus, so long as the method of service is not prohibited by international agreement, the Court has considerable discretion to authorize an alternative means of service. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text.").

Further, a plaintiff does not have to attempt to effect service under Rule 4(f)(1) before requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3). *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-cv-369, 2014 WL 11342502, at *1 (W.D.

---

[3] Taiwan is not a party to the Hague convention, nor is it a member of any other international treaty related to service of international documents, so 4(f)(1) is not at issue in this case.

Tex. July 2, 2014); *See Rio Props.*, 284 F.3d at 1015 ("By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)."). However, even when "other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *Midmark Corp. v. Janak Healthcare Private Ltd.,* No. 3:14-cv-088, 2014 WL 1764704, at *2 (S.D. Ohio May 1, 2014).

### 2. The Hague Convention

The International Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") is an international treaty governing foreign defendants' service abroad. 20 U.S.T. 362, T.I.A.S. 6638, Art. 1. Direct "service pursuant to Hague Convention procedures is only required if the method of serving process involves the transmittal of documents abroad." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990); *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) ("The only transmittal to which the [Hague] Convention applies is a transmittal abroad that is required as a necessary part of service."). If alternative means to effectuate service exist, strict compliance with the Hague Convention's service requirements is not always mandatory. *Brown v. China Integrated Energy, Inc.,* No. 11-2559 MMM, 285 F.R.D. 560, 564 (C.D. Cal. 2012). The long-arm statute of the forum state governs the method of serving process. *Schlunk*, 486 U.S. at 706.

### 3. Constitutional Due Process Requirements

Because Plaintiff brought the claims in the Western District of Texas, an alternative method of service of process is valid if it complies with Texas' long-arm statute. The Texas long-arm statute does not require the transmittal of documents abroad when serving a foreign defendant.

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-cv-01827-N, 2018 WL 3330022, at *3 (N.D. Tex. Mar. 16, 2018) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)).

Courts have repeatedly interpreted the Texas long-arm statute "to reach as far as the federal constitutional requirements of due process will allow." *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex. 1996); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991); *U-Anchor Adver. Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex. 1997). To satisfy the constitutional requirements of due process, the method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Due process is satisfied when efforts at giving notice provide fundamental fairness by exhibiting a reasonable probability of actual notice. *Id.* at 317-18.

### III.   DISCUSSION

**A. Service by Registered Mail to D-Link is Justified.**

Plaintiff moves requesting leave to effect alternative service to D-Link pursuant to Rule 4(f)(2)(C)(ii) by having the clerk of the Court send the complaint and other required materials by a form of mail that the clerk addresses that requires a signed receipt to D-Link's headquarters. ECF No. 4. Rule 4(f) provides a number of equally valid methods of service to a foreign corporation. More specifically, Rule 4(f)(2)(C)(ii) states that if there are no internationally agreed means, or if an international agreement allows but does not specify other means, Plaintiff may effect service by using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt. *See TracFone Wireless, Inc. v. Bitton.*, No. 1:11-cv-21871-RNS, 2011 WL 7096132

(S.D. Fla. Jan. 11, 2012) (permitting service to a foreign corporation when the recipient state does not object to that method).

Therefore, unless Taiwanese law expressly prohibits service in the form requested by UNM, the requested service is justified. In *Vista Peak v. Giantplus,* the Court recognized that Taiwanese law does not prohibit the service of process by mail. *Vista Peak Adventures, LLC v. GiantPlus Tech. Co.,* No. 2:19-cv-185-JRG, 2019 WL 4039917 (ED. Tex. Aug. 27, 2019), *West v. Velo Enter. Co., Ltd.,* No. 5:13-cv-00024-OLG, 2013 WL 12086781, at *2 (W.D. Tex., Aug. 29, 2013) (finding that service of process by mail is not prohibited by Taiwanese law). Thus, UNM may serve D-Link via registered mail from this Court's clerk under Rule 4(f)(2)(C)(ii).

Additionally, the requested alternative service by UNM in the form of mail comports with the due process requirements of the United States Constitution. In *SignalQuest,* the Court found that service of process by mail to the defendant was reasonably calculated to and did give defendants notice of the action. *SignalQuest, Inc. v. Tien–Ming Chou & Oncque Corp.*,284 F.R.D. 45, 48 (D.N.H. May 22, 2012). Similarly, service by mail through the clerk of the Court is reasonably certain to apprise D-Link of the pendency of the action and give them adequate time to present their objections. The alternative service requested by UNM meets due process requirements because, under the Texas long-arm statute, due process is satisfied when efforts giving notice leads to fundamental fairness by exhibiting a reasonable probability of actual notice.

**B. Service of a Subsidiary of D-Link is not Authorized**

UNM also requests that the Court authorize service to D-Link through its subsidiary D-Link Systems. ECF No. 4. Specifically, UNM seeks authorization to serve D-Link by sending the complaint and other required materials to the registered agent for service of process for D-Link's United States subsidiary, D-Link Systems. ECF No. 4. The Court must direct service under Rule

4(f)(3), and the laws of the foreign country in which the corporation sits must not prohibit the form of service requested. *Affinity Labs of Tex.*, *LLC v. Nissan N. Am., Inc.*, No. 6:13-CV-369-WSS, 2014 WL 11342502 (W.D. Tex. Jul. 2, 2014). Federal courts have discretionary power over whether to direct service by other means not prohibited by international agreements. *Id.* at 1.

The Court recognizes the additional expense and time required to serve D-Link under Taiwanese law and sees these as a valid justification to grant an alternative method of service.[4] Further, Taiwan is not a signatory to the Hague convention, nor are they a signatory to any other treaty related to the international service of judicial documents. Thus, D-Link cannot be served pursuant to Hague Convention requirements. However, at this time, the Court finds that Plaintiff's proposed means of alternative service fails to satisfy the due process requirements afforded by the United States Constitution.

Due process does not require that the individuals served on behalf of foreign defendants represent them or are authorized to accept service on their behalf. *Brown v. China Integrated Energy*; *Inc.,* 285 F.R.D. 560, 563 (C.D. Cal. 2012). Rather, the method of service "must be such as one desirous of actually informing the absentee . . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Fifth Circuit held in *Lisson* that regarding foreign defendants, even if its foreign parent corporation does not explicitly authorize a domestic subsidiary as an agent for

---

[4] *Baker Hughes Inc. v. Homa,* CIV. A. H–11–3757, 2012 WL 1551727, at *16–17 (S.D.Tex. Apr. 30, 2012) (holding that avoiding additional cost is a sufficient justification for seeking an alternative method of service; however, the alternative method requested was not authorized because it violated the internal law of the country where the plaintiff sought service to be effected); *Vinewood Capital, L.L.C. v. Al Islami,* CIV A 406–CV–316–Y, 2006 WL 3151535, at *2 (N.D.Tex. Nov. 2, 2006) (finding the plaintiff's attempt to serve the defendants through the Texas Secretary of State "was not an unreasonable effort to easily accomplish service and limit the costs associated with international service of process ...").

service, the subsidiary might still be capable of receiving such service. *Lisson v. ING GROEP N.V.,* 262 Fed. App'x. 567, 570 (5th Cir. 2007). When applying a state long-arm statute, "as long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary — without sending documents abroad." *Id.* (quoting *Sheets v. Yamaha Motors Corp. U.S.A.,* 891 F.2d 533, 536 (5th Cir.1990)). Thus, a foreign corporation receives proper service through its domestic subsidiary where the evidence shows that one is the agent or alter ego of the other. *Affinity* Labs, 2014 WL 11342502, at *4.

The Fifth Circuit has developed a list of factors to use when trying to determine whether a subsidiary is the alter ego of its parent.[5] To prove that D-Link Systems is the alter ego of D-Link, Plaintiff must show that these factors, when taken in aggregate, indicate that D-Link so dominated D-Link Systems that the Court is justified in disregarding the corporate separation of the two companies. *Id.* Plaintiff only shows the consolidated financial statement of D-Link and its subsidiaries and an annual report highlighting the parent company's globalization efforts. ECF No. 4, Ex. 1. Although D-Link Systems is a wholly-owned subsidiary of D-Link, Plaintiff fails to provide sufficient evidence relating to the aggregate factors to prove that D-Link Systems is an alter-ego or agent of D-Link. *See Nichols*, 151 F. Supp. 2d at 281. Therefore, authorization of

---

[5] *Nichols v. Pabtex, Inc.,* 151 F.Supp.2d 772, 781 (E.D. Tex. March 23, 2001). (1) The parent and the subsidiary have common stock ownership (2); The parent and the subsidiary have common directors or officers (3); The parent and the subsidiary have common business departments (4); The parent and the subsidiary file consolidated financial statements and tax returns; (5)The parent finances the subsidiary; (6) The parent caused the incorporation of the subsidiary; (7) The subsidiary operates with grossly inadequate capital; (8)The parent pays the salaries and other expenses of the subsidiary; (9) The subsidiary receives no business except that given to it by the parent; (10) The parent uses the subsidiary's property as its own; (11) The daily operations of the two corporations are not kept separate; (12) The subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings; (13) The directors and officers of the subsidiary act independently in the interest of that company, or whether they take their orders from the parent and act in the parent's interest; (14) The connection of the parent's employee, officer or director to the subsidiary's tort or contract giving rise to the suit.

UNM's second requested method of alternative service would violate D-Link's due process protections afforded by the United States Constitution.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that UNM's Motion for Leave to Effect Alternative Service on D-Link should be and hereby is **GRANTED** in part and **DENIED** in part. It is therefore **ORDERED** that UNM may effect service on D-Link using the following means: sending the complaint and other required materials by a form of mail that the clerk addresses that requires a signed receipt to D-Link Corporation's headquarters at No. 289, Sinhu 3rd Rd., Neihu District, Taipei, Taiwan.

**SIGNED** this 13th day of July, 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE